[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-15757

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 08, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00022-CR-1-CLS-RRA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOSE DUPREE MCELRATH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(November 8, 2007)**

Before MARCUS and PRYOR, Circuit Judges, and LAND,[*] District Judge.

PER CURIAM:

Carlose Dupree McElrath ("McElrath") appeals from his 188-month

_____

[*] Honorable Clay D. Land, United States District Judge for the Middle District of Georgia, sitting by designation.

sentence after pleading guilty to conspiracy to distribute 5 grams or more of cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), and to distribution of 50 grams or more of cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A). At issue on appeal is whether we should remand the case for re-sentencing simply because the district court did not sua sponte postpone sentencing when the Defendant and his counsel received a revised Presentence Investigation Report ("PSI") the same day as the sentencing hearing. McElrath contends that he was denied his due process rights, and his statutory rights under Federal Rule of Criminal Procedure 32(e)(2) to receive the PSI at least thirty-five days before sentencing, and under Rule 32(i)(1)(A) to have the district court verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report. After thorough review, we can find no plain error, and therefore, affirm.

I.

The grand jury charged McElrath and his co-defendant Terrence Clevon Moon, who is not involved in this appeal, with conspiracy to distribute and the substantive crime of distribution of crack cocaine. Specifically, McElrath and his co-defendant were charged in Count One with conspiracy to "distribute 5 grams or more of a mixture and substance containing a detectable amount of cocaine base,

2

more commonly referred to as 'crack' cocaine, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), all in violation of Title 21, United States Code, Section 846." Count Two pertained only to co-defendant Moon. Count Three charged McElrath with "knowingly, intentionally, and unlawfully distribut[ing] 50 grams or more of a mixture and substance containing a detectible amount of cocaine base" on or about November 14, 2005, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Count Four similarly charged McElrath with distributing 50 grams or more of a mixture containing cocaine base on or about December 13, 2005, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

At his arraignment, McElrath originally pled not guilty to the three charges leveled against him, but at a hearing on March 16, 2006, he entered pleas of guilty to Counts One and Three.[1] As part of the plea deal, the Government agreed to (1) move that Count Four be dismissed; (2) recommend that McElrath receive a three-level reduction from guideline offense level 32 to 29 for acceptance of responsibility; (3) recommend that McElrath be sentenced at the low end of the

---

[1] In the plea agreement, McElrath also waived his right to appeal, although he reserved the right to appeal a punishment that either exceeded the statutory maximum or constituted an upward departure from the guideline sentencing range. The Government initially moved to dismiss this appeal on the basis of the appeal waiver, but has subsequently withdrawn its motion. The applicability of the appeal waiver is accordingly now moot and we focus only on the Defendant's substantive claim.

advisory guideline range; and (4) consider filing a motion for downward departure under U.S.S.G. 5k1.1 and 18 U.S.C. § 3553(e). During this change-of-plea hearing, the district court questioned the Defendant extensively about his competency, the voluntariness of his plea, and his understanding of the charges to which he was pleading guilty.

The Government offered the following factual foundation for McElrath's guilty pleas. On November 1, 2005, a confidential source ("CS") telephoned Carlose McElrath and arranged for the purchase of 1 1/4 ounces of crack cocaine. The CS later traveled to the meeting location, at 539 Garrett Road, Sylacauga, Alabama, and advised the agents in charge of the case that the vehicle of Terrence Moon was at the residence. Moments later, McElrath and Moon drove up to the residence in a white Lincoln. McElrath informed the CS that he had the ounce of crack but that the CS would have to go get it from Moon at the "trap." (The trap is a drug-dealing location used to avoid association with the drug dealers.) The CS traveled to the trap, met with Moon and purchased one ounce of crack cocaine for $850. McElrath then called the CS to report that the 1/4 ounce that remained of the transaction would arrive at the location shortly. The agents later retrieved the crack cocaine, which weighed 31.1 grams.

On November 14, 2005, the CS arranged to consummate another transaction

to buy crack cocaine from McElrath for $1,575. During a telephone call with McElrath, the CS was told that the "toolbox" -- i.e., two ounces of crack -- would be ready shortly. McElrath then told the CS to meet him "up top," which was a code for McElrath's "trap" on Coleman Road in Sylacauga. The CS and McElrath later met at the location on Coleman Road and transacted the two ounce purchase and sale of cocaine. The crack cocaine subsequently retrieved weighed 57.6 grams.

McElrath's initial PSI, disclosed to the parties on May 24, 2006, recommended granting McElrath a three-level reduction in his offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, and in accordance with the plea agreement. On June 20, 2006, however, a revised PSI report was prepared denying the three-level reduction because of two drug offenses that McElrath committed after entering a guilty plea. First, on May 10, 2006, McElrath sold approximately one ounce of crack cocaine to a cooperating individual, resulting in the revocation of his bond. Second, on May 17, 2006, McElrath's urine tested positive for Hydrocodone and Hydromorphone. The revised PSI was not disclosed, however, to the district court, McElrath, or his defense counsel, until the day of the sentencing hearing, held on October 20, 2006.

After becoming aware at the sentencing hearing of the revised PSI, the district court directed that the Defendant and his counsel receive a copy, and then

proceeded to explain the differences between the initial and revised PSIs to the Defendant. The changes in the PSI were limited to McElrath's intervening criminal conduct and the accompanying denial of a three-level reduction in his offense level calculation for acceptance of responsibility. The district court gave the Defendant an opportunity to object to the denial of a three-level adjustment for acceptance of responsibility.

Accepting the district court's invitation, McElrath did object to the change. But, notably, the Defendant did not object to the fact that he had not previously received a copy of the revised PSI. McElrath thus never requested a continuance of the sentencing proceedings. Indeed, he never said that his rights were in any way prejudiced by the failure to grant a continuance.

The district court overruled McElrath's objection to the denial of the three-level adjustment, instead adopting the revised PSI and making a finding that the guideline offense level was 32 and the criminal history category was III, resulting in a sentencing guideline range of 151 to 188 months' imprisonment. The district court also explained that it was going forward with the sentencing out of fairness for the Defendant because McElrath was scheduled to be sentenced the same day in front of another district court judge for other crimes, noting that:

> postponing your sentence until after the sentencing proceeding scheduled for 2:00 o'clock today before Judge Clemon would have

6

resulted in an increase in your criminal history category. And if it had gone up to -- let's just say a IV with an offense level of 32, you'd be looking at 168 to 210 months.

The district court thereafter sentenced McElrath to 188 months imprisonment. This timely appeal followed.

## II.

Because McElrath did not raise an objection at sentencing to the late disclosure of the revised PSI, we will review his claim only for plain error. See United States v. Shelton, 400 F.3d 1325, 1328 (11th Cir. 2005). Under the plain error standard of review, we will reverse a district court decision only if (1) an error was committed; (2) the error was plain; and (3) the error affected the substantial rights of the defendant. United States v. Olano, 507 U.S. 725, 732 (1993). An error affects a defendant's substantial rights if the error was prejudicial and affected the outcome of the district court proceedings. Id. at 734. If we discover a plain error that affects substantial rights, we will remand for a correction of the error only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. at 736 (alteration in original). The burden rests with the movant (here the Defendant) to establish each element of plain error by a preponderance of the evidence. United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005).

McElrath claims the district court violated the Due Process Clause, as well as Federal Rule of Criminal Procedure 32(e)(2),[2] which requires the probation officer to furnish the PSI to the defendant at least thirty-five days before the sentencing hearing unless the defendant waives this minimum period, and Rule 32(i)(1)(A), which, in turn, requires a court before imposing sentence to "verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report."[3]

The district court noted that Rule 32(e)(2) applies only to the original PSI and not to the revised PSI. Since the original PSI was disclosed to the Defendant more than thirty-five days before sentencing, the Government argues that Rule 32(e)(2) was not violated. A careful reading of other provisions in Rule 32 suggests that is the case. Rule 32(f) gives the parties an opportunity to object to the PSI within fourteen days of receiving it, and Rule 32(g) provides that at least seven days before sentencing, the probation officer must submit to the court and to the

---

[2] Rule 32(e)(2) provides in pertinent part: "The probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period."

[3] McElrath has not alleged a violation of either Federal Rule of Criminal Procedure 32(g), which provides that "[a]t least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them" or 18 U.S.C. § 3552(d), which requires the court to disclose the PSI to the defendant, the defense attorney, and the Government's attorney at least ten days prior to the date set for sentencing.

parties the PSI and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them. Rule 32's sequence of timing for receiving and objecting to a PSI therefore suggests that the thirty-five day requirement applies only to the original PSI.

However, we need not determine the applicability of Rule 32(e)(2) to a revised PSI because, even assuming arguendo that there was an error, and that it was plain, the Defendant has not begun to meet his burden of showing that he has been prejudiced because the district court did not, sua sponte, postpone the sentencing. The purpose of the thirty-five day requirement is to ensure fairness and accuracy in sentencing by allowing the defendant adequate time to find any objectionable recommendations in the PSI. Having objected to the only real change from the original PSI -- the three-level adjustment for acceptance of responsibility -- the Defendant was not prejudiced by the truncated time he had to consider the revised PSI. Indeed, it seems, to the contrary, that the Defendant actually benefitted from the district court's decision not to delay proceedings because McElrath was scheduled to be sentenced the same day in front of another district court judge for other crimes. Had the sentencing for those other crimes taken place first, the Defendant's criminal-history category in this case could have changed from a level III to at least a level IV, thereby elevating his exposure -- a point the

9

district court made abundantly clear to the Defendant at the time of sentencing. Simply put, McElrath's substantial rights were not affected. He has shown no prejudice. Accordingly, his claims must be denied and the sentence affirmed.

**AFFIRMED.**